IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGEL JARA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:17-CV-00783 |
| v. | ) |
| | ) Hon. Thomas M. Durkin |
| COOK COUNTY and DR. BARBARA DAVIS, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiff Angel Jara ("Plaintiff" or "Mr. Jara"), by and through his attorneys, Sheppard Mullin Richter & Hampton LLP, in support of his Third Amended Complaint against Defendants Cook County and Dr. Barbara Davis (collectively, "Defendants"), states as follows:

**NATURE OF THE ACTION**

1. This action is brought pursuant to 42 U.S.C. § 1983 and the Constitution of the United States to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. Plaintiff Angel Jara suffers from permanent nerve damage and pain in his abdomen and back as a result of a gunshot wound he endured in November of 2011. The bullet caused severe damage to his liver, kidney, and spleen, requiring surgery and weeks of hospitalization. The injury also resulted in extensive nerve damage. After Mr. Jara underwent surgery to repair his internal organs, hospital doctors prescribed him Vicodin to relieve the pain caused by the nerve damage and the operation.

3. While incarcerated in Cook County Jail, Defendants knew about Mr. Jara's wound and accompanying pain and prescribed pain medication for him. Mr. Jara was initially prescribed

Tylenol, Ibuprofen, Advil and Methocarbamol, none of which were effective in treating his pain. After Mr. Jara complained that the medication was not working and that his condition had worsened due to sleeping on the top bunk of a steel bed with a padded piece of cotton, Dr. Davis took him off the pain medication, and has refused to prescribe him anything else or to make any other accommodation for his consistent and treatable pain.

4. Dr. Davis' repeated refusal to administer necessary pain medication to treat Mr. Jara's chronic and severe pain is part of Cook County's informal policy, practice and/or custom of deliberate indifference to and disregard of inmates' requests for necessary medication, medical care and/or treatment, as demonstrated by Mr. Jara's personal knowledge of similarly treated inmates, the numerous lawsuits alleging ignored inmate grievances and failure to dispense medication, and a 2008 Department of Justice Report that found Cook County Jail's medical care "falls below the constitutionally required standards of care."

5. As a result of Defendants' deliberate indifference to his condition, Mr. Jara has been forced to endure severe and escalating pain, as well as unnecessary medical complications for which he is entitled to compensation and relief.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and the Eighth Amendment of the United States Constitution.

7. Venue is proper under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to the claims occurred in this judicial district.

## PARTIES

8. Plaintiff Angel Jara was at all relevant times a citizen of the United States. At all times relevant to the events at issue in this suit, Mr. Jara was incarcerated at the Cook County

Department of Corrections located at 2950 S. California, Chicago, Illinois, 60608 ("Cook County Jail").

9. Upon information and belief, Cook County Jail is owned, operated, maintained and controlled by Defendant Cook County. Cook County is a unit of local government of the State of Illinois as defined by Article VII of the Constitution of the State of Illinois of 1970. Cook County is a body politic and corporate under 55 ILCS 5/5-1001.

10. Upon information and belief, at all times relevant to the events at issue in this suit, Defendant Dr. Barbara Davis was a doctor employed by Cermak Health Services of Cook County while Plaintiff was incarcerated at Cook County Jail. At all relevant times, Defendant Davis acted under the color of law.

## FACTUAL BACKGROUND

**Plaintiff's Serious Medical Condition**

11. In November 2011, Plaintiff was shot in his abdomen. The bullet entered through his abdomen, pierced his internal organs, and exited through his back.

12. In November 2011, Plaintiff underwent emergency surgery to repair damage to his liver, kidney and spleen, as a result of the bullet wound he suffered.

13. Due to the surgeries required to repair damage to his vital organs, Plaintiff has a large scar which runs from his waist to his upper abdomen.

14. The bullet temporarily paralyzed Plaintiff, and he had to re-learn to walk.

15. The physicians who treated Plaintiff after his surgery prescribed him Vicodin in order to manage the lingering pain he experienced from nerve damage and the operation.

16. In January 2013, Plaintiff underwent surgery at Mount Sinai Hospital to remove extensive scar tissue that had developed and wrapped around his intestine.

17. Plaintiff was incarcerated in a juvenile detention center on or about April 2014 at the age of 17.

18. During his incarceration at the juvenile detention center, Plaintiff was provided a medical mattress to help alleviate the pain and distress caused by his bullet wound.

19. On or about January 21, 2015, Plaintiff was moved to Cook County Jail.

20. Upon being admitted to Cook County Jail, Plaintiff informed jail staff of his gunshot wound, as well as his need for pain medication, a double mattress, and a permit to reside on the bottom bunk of his unit.

21. Plaintiff has not been allowed access to a medical mattress or a permit for a bottom bunk while at Cook County Jail.

22. Due to sleeping on the top bunk with a steel bed, complications from Plaintiff's wound exacerbated to the point of causing him to suffer extreme pain and severe spasms in his back and abdomen.

23. Plaintiff's condition has worsened as a result of his having to climb up and down from his bed, which is situated on the top bunk.

**Defendants' Deliberate Indifference**

24. During the summer of 2016, Plaintiff requested a medical mattress, and his request was denied by the jail physicians.

25. During the summer of 2016, Plaintiff requested a medical back brace, and his request was denied by the jail physicians.

26. Plaintiff has not received essential care since his incarceration at Cook County Jail started and Defendants have essentially stopped providing any medical treatment since he initiated the instant lawsuit.

27. During the course of his treatment under Dr. Davis, Plaintiff was repeatedly refused adequate medical supervision and care.

28. Upon information and belief, Dr. Davis refused to so much as review Plaintiff's medical records from Christ Hospital and Mount Sinai Hospital.

29. Though Plaintiff has repeatedly requested a medical mattress to help alleviate the symptoms of his chronic and severe pain, Dr. Davis has always refused to allow this necessary medical treatment.

30. Dr. Davis refuses to allow Plaintiff to sleep on a bottom bunk in order to avoid the stress, pain and spasms resultant from climbing up to and down from the top bunk.

31. During Plaintiff's last encounter with Dr. Davis, he was told "You're getting on my nerves, I'm tired of seeing you."

32. Dr. Davis, without any explanation to Plaintiff, has cancelled his therapy sessions for his back.

33. Dr. Davis has refused to reschedule these sessions.

34. Plaintiff's pain has become so severe that Plaintiff cannot sleep, which has affected him physically and mentally.

35. Despite Dr. Davis' knowledge of Plaintiff's medical needs and his past prescriptions for pain medication, she has refused to re-prescribe any more or different medication for his pain or nerve damage.

36. Knowing that Plaintiff is in severe pain and discomfort, Dr. Davis has also refused to prescribe Plaintiff a double mattress.

37. Instead of giving Plaintiff a bottom bunk bed to sleep on, he is forced to climb up to and down from the top bunk, even though Defendants know of his pain and back problems.

38. Plaintiff has asked for a medical back brace multiple times, but Defendants continue to ignore his requests.

39. Defendants have repeatedly told Plaintiff that he would be placed on medication that will help, but no such medication has been prescribed.

40. From March 2016 to February 2017, Mr. Jara submitted six grievances regarding the lack of medical attention from Cook County Jail physicians.

   a. On or about March 28, 2016, Plaintiff filed a grievance regarding his medical treatment. Plaintiff received a response to his March 28, 2016 grievance on April 20, 2016. Plaintiff requested an appeal on April 20, 2016. Plaintiff's appeal was denied by Susan Shebel on May 16, 2016.

   b. On or about September 8, 2016, Plaintiff filed a grievance regarding his medical prescriptions. Plaintiff received a response to his September 8, 2016 grievance on September 29, 2016. Plaintiff requested an appeal on September 29, 2016. Plaintiff's appeal was denied by Susan Shebel on October 17, 2016.

   c. On or about October 21, 2016, Plaintiff filed a grievance regarding his medical treatment. Plaintiff received a response to his October 21, 2016 grievance in November 2016. Plaintiff requested an appeal in November 2016. Plaintiff's appeal was denied by Susan Shebel on December 5, 2016.

   d. On or about October 25, 2016, Plaintiff filed a grievance requesting the names of doctors he had seen, as well as the dates of those visits, so that he might file suit.

   e. On or about January 10, 2017, Plaintiff filed a grievance requesting adequate medical treatment.

  f. On or about January 11, 2017, Plaintiff filed a grievance regarding his medical treatment. Plaintiff received a response to his January 11, 2017 grievance on January 25, 2017. Plaintiff requested an appeal and it was subsequently denied on February 15, 2017.

**Cook County's Policy, Practice and/or Custom**

  41. Cook County has a policy, practice and/or custom of ignoring inmates' grievances and requests for necessary medication, medical care/and or treatment and failing to prescribe and/or dispense medical, medical care and/or treatment that was and continues to be the moving force behind Plaintiff's continued and unnecessary suffering.

  42. Cook County's widespread policy, practice and/or custom of ignoring inmates' grievances and requests for necessary medication, medical care and/or treatment and its failure to prescribe and/or dispense medication, medical care and/or treatment, is evidenced by a 2008 Department of Justice Report (the "Report") which found that Cook County Jail's medical care "falls below the constitutionally required standards of care." Among other deficiencies in medical care, the Report found inadequate medication administration and inadequate access to medical care.

  43. The Report described significant delays, errors, and lapses in medication administration. For example:

  a. In June 2007, inmate David M. was prescribed a blood thinner Coumadin, but there was a 22-day delay before he received his first dose.

  b. In May 2007, inmate Roy H. was prescribed medication after a kidney transplant, but did not receive his medication for 16 days, resulting in his hospitalization.

      c.      In 2007, inmate Stella R. was prescribed Coumadin, but Cook County Jail staff failed to order her prescriptions, resulting in nearly 20 days without her prescriptions.

    44.      The Report also stated that inmates must make several requests for care before they receive treatment. For example, inmate Jackson E. made repeated requests for medical treatment to no avail, and was even placed in lock down for making these repeated requests for medical care.

    45.      The Report put Cook County on notice that its medical care, medication administration, and access to medical care are inadequate and fall below constitutional standards of care.

    46.      Since the 2008 Report, Cook County's pattern of inadequate medical care, medication administration, and access to medical care has continued, as demonstrated by numerous lawsuits that have been filed against Cook County by inmates alleging similar experiences of ignored, delayed and denied requests for medication and medical care as Plaintiff has experienced:

      a.      In *Johnson v. Hart*, No. 10 C 240, 2011 WL 1706117 (N.D. Ill. May 5, 2011), inmate Kenneth Johnson alleged that he was denied proper post-surgical care and medication to treat the severe, excruciating pain he experienced from gunshot wounds. He was initially given Tylenol, and from March 2009-December 2009 submitted multiple medical request slips to no avail. Not until June 2009 was he furnished a double mattress. Despite submitting multiple grievances, Johnson was never provided any physical therapy, even though a doctor prescribed it. One jail doctor berated him for relentlessly badgering the health care unit.

      b.      In *Alvarez v. Baker*, No. 14 C 4208, 2016 WL 5341803 (N.D. Ill. Sept. 23, 2016), inmate Robert Alvarez alleged he was severely beaten by other inmates and suffered a broken cheek bone and stab wounds. Dr. Yan K Yo Do gave him ice packs and ibuprofen but no

other medical treatment, and Alvarez did not receive a CAT scan until the following day. Dr. Baker told Alvarez he required surgery, but that it would be "ok…to wait", and also told Alvarez, "Don't make this hard or you will end up in segregation." After surgery, Alvarez did not receive the medication he needed for his diabetes or for his recovery from surgery, despite making numerous complaints and submitting several yellow forms. Alvarez was later prescribed acetaminophen, but not the medication Dr. Brennan prescribed him, and would go long periods without any pain medication at all. At one point, a jail doctor and nurse refused to administer Tylenol and muscle relaxants because they are "very addictive" and Alvarez was told "that's the way things are done at Cook County Cermak Health Services."

    c. In *Pickett v. Dart*, No. 13 C 1205, 2014 WL 919673 (N.D. Ill. Mar. 10, 2014), inmate Trolus Pickett had diabetes. Despite initially receiving medication, he did not receive medication, blood testing, or medical attention for his diabetes for "a measurable period of time." A jail doctor dismissed Pickett's concerns and accused him of "trying to get more food." Pickett filed multiple medical-related grievances, with delays from 12 to twenty five days between the date he submitted them and the date a social worker received it, and delays of one to two months before he received a written response.

    d. In *Johnson v. Dart*, No. 15 C 1327, 2016 WL 1392324 (N.D. Ill. Apr. 8, 2016), on October 6, 2013, inmate Bernard Johnson slipped and fell in the jail shower area and was injured. Over the course of several days, Johnson informed nurses of his pain and rectal bleeding, but they did not prescribe him any medication or conduct any tests other than taking his blood pressure. The nurses eventually gave him 2 ibuprofen tablets, but did not provide any additional medical care. For several weeks Johnson filled out health service requests and complained to the nurses he was unable to sleep and passing blood through his stool, but he

received no response. In November 2013 he saw Dr. Davis, who told him if he lost weight it would relieve stress on his body and prescribed him ibuprofen. Dr. Davis did not check for rectal bleeding or order additional tests. Johnson saw Dr. Davis again in January and February 2014, but she did not follow up on his complaints.

e. In *Cruz v. Cook County*, No. 14-cv-7935, 2016 WL 5234592 (N.D. Ill. Sept. 22, 2016), inmate Jose Cruz suffered from Attention Deficit Disorder, depression, and hyperactivity. While incarcerated from 2010 to 2011, the jail's delivery of his medication was problematic and Cruz's attorney had to seek the court's intervention so that Cruz could receive proper treatment. Cruz was incarcerated again in January 2014 and was prescribed 50 milligrams of Straterra to treat his ADHD. Cruz was released on bond, but was incarcerated again in April 2014 for violating his bond. He did not receive any medication for 2 months, despite the fact that the doctors knew from his previous incarceration that he needed medication. When he finally received his medication, the doctor prescribed him half the dose he was prescribed in January 2014. Cruz submitted several grievances and health requests from May-August 2014 but they were all denied. A doctor prescribed him 50 milligrams of Straterra in August 2014, but Cruz never received the appropriate dosage of his medication. Cruz's pleas for help were ignored and he attempted to hang himself with bed sheets.

f. In *Harper v. Dart*, No. 13 C 9265, 2014 WL 5325370 (N.D. Ill. Oct. 20, 2014), inmate Bednago Harper alleged that he was denied prompt and adequate care and treatment for a hernia. In December 2011 he informed a doctor of his severe pain, and the doctor told him "his pain was not severe enough to warrant treatment" and that he would not be treated unless he was "doubled over in pain and unable to walk." From 2012-2013 Harper repeatedly told medical

staff in person and via grievances about his hernia and pain. A doctor saw him in May 2013, who told him there was nothing that could be done for Harper's hernia or pain.

47. The numerous lawsuits inmates have filed against Cook County alleging experiences similar to Plaintiff's ignored requests for medication, medical care and/or treatment, and dismissive comments from jail doctors, have put Cook County on notice and made it aware of its continuing constitutional violations and the resultant risks to inmate health.

48. Cook County's persistent neglect of its inmates is further evidenced by Plaintiff's personal knowledge of inmates in Cook County Jail who have been treated similarly.

   a. Plaintiff is aware of multiple inmates within Cook County jail who have been forced to endure needless pain and suffering over large expanses of time, due primarily to the neglect and indifference shown by Cook County's medical staff.

   b. For example, Plaintiff is aware of a present inmate of Cook County Jail who was incarcerated after having suffered nerve damage to his shoulder due to an altercation he was involved in. This inmate, as with Plaintiff, was denied appropriate and effective medical care by Cook County's physicians. Though the inmate was in severe pain, Cook County Jail medical staff repeatedly denied him medication to which he was due, and the inmate was forced to endure pain and suffering needlessly.

**COUNT I:**
**Claim Under 42 U.S.C. § 1983 - Cruel and Unusual Punishment, Deliberate Indifference to a Serious Medical Need**

49. Plaintiff re-alleges and incorporates paragraphs 1 through 48 above as if fully stated herein.

50. Plaintiff's nerve damage is a serious medical condition that requires proper medical care, including pain medication.

51. Plaintiff's continuing pain, discomfort, and back spasms required immediate diagnosis and medical care.

52. Dr. Davis was aware of and deliberately indifferent to Plaintiff's serious medical needs.

53. As described above, the response Plaintiff received from Dr. Davis after he complained of his injury on multiple occasions evidences her intentional denial of Plaintiff's access to medical care, which has seriously aggravated Plaintiff's injury, and which constitutes deliberate indifference.

54. The failure of Dr. Davis to provide adequate medical care or allow for the provision of adequate medical care caused and causes Plaintiff undue and unnecessary pain and suffering and mental anguish, as well as further injury.

55. Dr. Davis' misconduct was undertaken under color of law and constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

WHEREFORE, Plaintiff Angel Jara requests that this Court grant the following relief against Dr. Davis:

a. Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by Plaintiff as a result of the events alleged herein,

b. Injunctive relief in the form of prescriptions for pain medication, a bottom bunk bed, and an additional mattress pad for Plaintiff to sleep on,

c. Punitive damages in an amount to be determined at trial,

d. An order awarding Plaintiff reasonable attorneys' fees and costs,

e. And for any other such relief as this Court deems appropriate.

## COUNT II:
### *Monell* Claim Against Cook County Under 42 U.S.C. § 1983

56. Plaintiff re-alleges and incorporates paragraphs 1 through 55 above as if fully stated herein.

57. Cook County has a policy, practice and/or custom that was and continues to be the moving force behind Plaintiff's continued and unnecessary suffering that is a result of Dr. Davis' refusal to prescribe Plaintiff appropriate and effective pain medication or treatment.

58. Despite being put on notice by the Report, subsequent lawsuits, and direct grievances of its inmates, Cook County has failed to address the issues of ignored and delayed responses to inmates' requests for medication, medical care and/or treatment.

59. Cook County's continued failure to address the issues raised in the Report, subsequent lawsuits, and direct grievances of its inmates evidences its policy, practice and/or custom of ignoring inmates' requests for medication, medical care and/or treatment.

60. As a result of Cook County's policy, practice and/or custom of ignoring inmates' requests for medication, medical care and/or treatment, Cook County failed to take appropriate steps to protect Plaintiff, and he has been needlessly denied medication, a medical mattress and a bottom bunk for his chronic and severe pain.

WHEREFORE, Plaintiff Angel Jara requests that this Court grant the following relief against Cook County:

a. Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by Plaintiff as a result of the events alleged herein,

b. Injunctive relief in the form of prescriptions for pain medication, a bottom bunk bed, and an additional mattress pad for Plaintiff to sleep on,

c. Punitive damages in an amount to be determined at trial,

     d.     An order awarding Plaintiff reasonable attorneys' fees and costs,

     e.     And for any other such relief as this Court deems appropriate.

## COUNT III:
## CLAIM UNDER 745 ILCS 10/9-102 AGAINST COOK COUNTY

61. Plaintiff re-alleges and incorporates paragraphs 1 through 60 above as if fully stated herein.

62. Defendant Cook County was, at all times material to this Complaint, the employer of Defendant Dr. Davis.

63. Dr. Davis committed the acts alleged above under color of law and in the scope of her employment as an employee of Cook County.

WHEREFORE, pursuant to 745 ILCS 10/9-102, Plaintiff demands that if any non-punitive damages, fees or costs are awarded against Defendant Dr. Davis by way of judgment or settlement, then Defendant Cook County should be liable to pay the award.

## JURY DEMAND

Plaintiff Angel Jara demands a jury trial on all issues in this case, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 12, 2017                    Respectfully submitted,

                                        By:    /s/ *Kevin M. Cloutier*
                                                One of Plaintiff's Attorneys

Kevin M. Cloutier (6273805)
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
Three First National Plaza
70 West Madison Street, 48th floor
Chicago, Illinois 60602
Direct: (312) 499-6304
Fax: (312) 499-6301
kcloutier@sheppardmullin.com

-15-

## CERTIFICATE OF SERVICE

      PLEASE TAKE NOTICE that on June 12, 2017, service of the foregoing **Plaintiff's Third Amended Complaint** was made pursuant to ECF and I shall comply with LR 5.5 as to any party who is not an ECF user or represented by an ECF user.

                                         */s/Kevin M. Cloutier*
                                            Kevin M. Cloutier